IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELEN D. MARTIN, ) | |
| ) | |
| *Pro Se* Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-303 GMS |
| ) | |
| PACHULSKI, STANG, ZIEHL, ) | |
| YOUNG & JONES, P.C., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

### I. INTRODUCTION

On May 8, 2006, the plaintiff, Helen D. Martin ("Martin"), filed the present lawsuit against the Pachulski, Stang, Ziehl, Young, & Jones, P.C. (the "defendant"), alleging that the defendant violated her constitutional rights, pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and the Delaware State Discrimination Act, Del. Code Ann. tit. 19, § 710 *et seq*. Martin, an African American female, further alleges that she was subjected to a hostile work environment and constructively discharged.

Presently before the court is the defendant's motion for summary judgment on all claims. For the reasons that follow, the court will grant the motion.

### II. BACKGROUND

Martin was employed as a managing supervisor for the Delaware office file room of the defendant from January 10, 2000, until January 27, 2003. (D.I. 1 ¶¶ 5, 7.)[1] During her tenure as managing supervisor, Martin complained to the defendant's managers a number of times regarding

---

[1] The facts as recited herein are taken from Martin's complaint, deposition testimony, and Charge of Discrimination.

personnel problems. Martin's complaints began near the end of 2001, when she and the file room staff met with Mary Ritchie Johnson ("Johnson"), a personnel manager, and Laura Davis Jones ("Jones"), a partner at the defendant, to discuss their concerns. (D.I. 26, at A132.) Specifically, Martin complained that employees were not listening to direction, and that there was no discipline in the file room. (Id.) Martin also complained of personal hygiene issues – that is, "people coming to work who hadn't bathed." (Id. at A30.) According to Martin, she spoke with Johnson about the personal hygiene issues, because they directly related to her ability to work. In other words, Martin had to work with and supervise the people with hygiene issues. (Id. at A35.) She also had to supervise the other file room employees that were offended by the odor. (Id. at A43.) Martin testified that Johnson responded by telling her not to worry about it, because the issue did not involve her and that she should worry about her own people, i.e. the file room employees. (Id. at A36.)  Martin viewed this response as disrespectful and believed that Johnson should have respected her by telling the employees to bathe and take care of their personal hygiene. (Id. at A38.) Martin also viewed this response as discrimination, because management violated her "by not doing their job as to [her], . . . a black female being a supervisor for their company." (Id. at A40.)

Martin further complained to management about disrespect from coworkers, including coworkers not doing work, misusing their breaks, misusing the Internet, dressing inappropriately, removing sensitive documents, and hiding work. (Id. at A47-48.) However, management did not take care of the problems about which she complained. (Id. at A51.)  As a result, the problems continued over her tenure at the defendant, "every day, all day." (Id.)  Martin considered management's actions both disrespectful and discriminatory, and concluded that management would have acted differently if she was white. (Id. at A54.) She also concluded that management would

have fired her had she exhibited the same conduct. (Id.)

Martin also complained to management about racial name calling between coworkers. According to Martin, she did not hear any of the name calling, but was informed about it by other file room employees. (Id. at A49, A73.) Martin then made a complaint to management, and Johnson convened a meeting with at least two employees, Martin, and Kathy Wittig ("Wittig"), another personnel manager, to discuss the situation. (Id. at A72.) During the meeting, it was agreed that the two employees would not speak to each other, and that everybody would try to make the workplace environment happier. (Id.) Immediately after the meeting, however, the employees began arguing again and calling each other names, so the problem was never rectified. (Id.) There were other incidents involving racial name calling or statements of which Martin became aware, but did not directly observe. (Id. at A78, A82-83.) Johnson and others, however, handled these issues by either meeting with the employees and/or firing them. (Id. at A75-77, A81.)

Martin next avers that she was discriminated against because she was not provided new printers. Martin explained at her deposition that she requested new printers and other equipment for the file room continuously, that the defendant approved her requests to receive the equipment, but that she never got the new equipment. (Id. at A69.) Jones called a meeting in December 2002 with Johnson and Martin to address the fact that the file room hadn't received their printers. (Id. at A101, A104.) According to Martin, "nothing came out of [the meeting]," and the same problems continued. (Id. at A105.) She believed, however, that had she been white, she would have had her equipment from day one. (Id. at A120.)

Martin further alleges that she was discriminated against, because she was not given raises for herself or her file room employees, even though she asked for them. (Id. at A163.) Martin

3

claims that she asked for a raise in August 2001, but only received a year-end raise, despite the fact that Jones promised her a raise for herself and the other file room employees. (Id. at A163-64.) Martin did receive year-end raises in 2001 and 2002, but not 2003, because she had quit her job by that time. (Id. at A165-66.) Martin claims that other white employees – two secretaries and a paralegal – received raises in a timely fashion. (Id. at A169.)

Finally, Martin contends that Johnson discriminated against her by telling both prospective and current employees that Martin was "straightforward and blunt." (Id. at A145-46.) Martin never heard Johnson use those words, but someone else at the defendant told her that Johnson was describing her in that way. (Id. at A146.) The incident upset Martin. (Id. at A147.)

On January 10, 2003, Martin left the defendant after Wittig finally noticed the personal hygiene problems. (Id. at A107.) On January 13, 2003, Martin submitted her letter of resignation, with two weeks notice, to be effective on January 27, 2003. (Id. at A108.) On January 15, 2003, Martin filed a formal Charge of Discrimination with the Delaware Department of Labor (the "DDOL") and the Equal Employment Opportunity Commission (the "EEOC"), summarizing her complaints of discrimination. After investigating, the DDOL issued a Notice of Dismissal (D.I. 26, at A302-03), and the EEOC issued a Dismissal and Notice of Rights, giving Martin the right to sue (D.I. 1 app.).

### III.   STANDARD OF REVIEW

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Biener v. Calio*, 361 F.3d 206, 210 (3d Cir. 2004). In reviewing

summary judgment decisions, the Third Circuit views all evidence and draws all inferences in the light most favorable to the non-movant, affirming if no reasonable jury could find for the non-movant. *See Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999). Thus, a trial court should only grant summary judgment if it determines that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a moving party has demonstrated the absence of a genuine issue of material fact – meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole – concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 257. Thus, summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor. In this situation, it may be said that the record as a whole points in one direction and the dispute is not "genuine." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**IV.    DISCUSSION**

The defendant filed a motion for summary judgment, asserting that there are no genuine issues of material fact as to any of Martin's claims. Martin did not file a brief or any response to the motion, even after the court issued an Order (D.I. 28) directing her to do so, on November 2, 2007. The court, however, will not grant the entry of summary judgment without considering the merits of the defendant's unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (finding that a "district court should not have granted summary judgment solely on the basis that a

motion for summary judgment was not opposed."). Accordingly, the court now turns to Martin's claims.

### A.     42 U.S.C. § 1983

Martin first alleges that the defendant discriminated against her in violation of her constitutional rights and 42 U.S.C. § 1983. A cause of action under section 1983 consists of two elements that a plaintiff must prove: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To act under "color of state law," a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49. In the present case, Martin's complaint does not state a claim against a state actor, as the defendant is a private law firm. Thus, there are no disputed issues of material fact regarding the plaintiff's section 1983 claim, and the defendants are entitled to judgment as a matter of law.

### B.     Racial Discrimination under Title VII

Martin next alleges that the defendant has discriminated against her based on her race in violation of Title VII. Title VII prohibits an employer from discriminating against any individual on the basis of race, color, religion, sex or national origin:

> [i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin.

42 U.S.C. § 2000e-2(a). Discrimination claims under Title VII are analyzed under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case by demonstrating that

6

she is a member of a protected class. The plaintiff must then establish that she was qualified for an employment position, but was not hired or was fired from the position "under circumstances that give rise to an inference of unlawful discrimination." *See Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995). When the plaintiff establishes this prima facie showing, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision. *Id*. If the defendant produces one or more legitimate reasons, the presumption of discrimination is rebutted. The plaintiff must then prove that the employer's reasons for its employment decision were pretextual – that is, that they are false and that the real reason for the employment decision was discriminatory. *Id.* Finally, if the plaintiff cannot carry the burden of proof under the shifting framework established in *McDonnell*, the defendant is entitled to summary judgment. *Stafford v. Noramco of Delaware, Inc.*, No. Civ. 97-376 GMS, 2000 WL 1868179, at *1 (D. Del. Dec. 15, 2000).

      1. Prima Facie Case

A prima facie discrimination case under Title VII requires the plaintiff to show that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action despite being qualified; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination, such as when non-members of the protected class are treated more favorably than the plaintiff. *Sarullo v. United States Postal Servs.*, 352 F.3d 789, 797 (3d Cir. 2003); *Miller v. Delaware Dep't of Prob. & Parole*, 158 F. Supp. 2d 406, 410-11 (D. Del. 2001). According to Martin, management from the defendant discriminated against her by not adequately handling the following: personal hygiene problems of certain employees; workplace misconduct between employees, including misuse of breaks, misuse of the Internet, and

inappropriate dress; requests for new printers and other equipment; and requests for pay raises for Martin and other coworkers. She further alleges that she was discriminated against when one of her supervisors described her to prospective and current employees as "straightforward and blunt." It is clear from the evidence in the record that Martin has satisfied the first two prongs of the burden-shifting regimen of *McDonnell Douglas*. Martin, an African American, is a member of a protected class and was qualified for her position as file room supervisor. The court, therefore, must determine whether Martin suffered an adverse employment action and, if so, whether the action occurred under circumstances giving rise to an inference of unlawful discrimination.

For purposes of a prima facie case of discrimination, the Third Circuit has defined an "adverse employment action" as something "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). A plaintiff may demonstrate the circumstantial inference of discrimination in many ways, but must produce "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . ." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999) (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)) (alterations in original). "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race . . . ." *Sarullo*, 352 F.3d 789, 798 (quoting *Pivirotto*, 191 F.3d at 352).

Turning to the facts of the present case, the court concludes that the evidence is insufficient to demonstrate that Martin suffered an adverse employment action. Martin's own deposition testimony establishes that she was not fired or demoted, did not have her work schedule altered, was not reassigned to a different position within the firm, and was not denied any pay raise or promotion

as a result of her complaints to management. Indeed, Martin testified at deposition that she left the job voluntarily, because she was having stress associated with her on-going complaints that management failed to address. (D.I. 26, at A98, A130.) Specifically, Martin testified that she left her job after Wittig finally noticed the personal hygiene problems. Id. at A107 ("I'm like, so finally, all of a sudden, now everybody smells this, and we've been complaining about this for over a year and a half. And I was done. I was just totally baffled, and I left. I never went back. . . . I just packed my stuff up and left and never went back."). Further, Martin speculated during her deposition that management would have addressed her complaints if she was white rather than black. Martin, however, pointed to no similarly situated employee outside of her protected class that was treated more favorably by the defendant.[2] Given the foregoing, the court finds that Martin did not meet her burden with respect to at least the third element of her prima facie case. Because Martin has not met her burden to establish a prima facie case, the court need not consider the other prongs of *McDonnell Douglas*, and the defendant is entitled to summary judgment on Martin's discrimination claim.[3]

---

[2] Martin did point to other white employees at the defendant that received pay raises. (D.I. 26, at A174-76.) Martin admitted, however, that the white employees to which she was referring were not file room employees or supervisors; they were either paralegals or secretaries. (Id.) Thus, they were not similarly situated to Martin.

[3] Martin also brings a claim pursuant to the Delaware State Discrimination Act (the "DDA"), Del. Code Ann. tit. 19, § 710 *et seq*. To establish a prima face case of discrimination under the DDA, a plaintiff must make the same showing required for a claim under Title VII. *Giles v. Family Court of Delaware*, 411 A.2d 599, 601-02 (Del. 1980) ("While the *McDonnell Douglas* test was developed in the context of Title VII cases, in our view it is appropriate for a § 711(a) action [under the DDA] as well, because the language of the Delaware statute is substantially the same as the Title VII language defining an unlawful employment practice."). Because the court has concluded that there are no genuine issues of material fact with respect to Martin's Title VII discrimination claim, it will grant the defendant's motion for summary judgment on Martin's DDA claim.

### C. Hostile Work Environment

Martin also alleges that the defendant created a racially hostile work environment, thereby violating Title VII. To establish a claim under Title VII based on a hostile work environment, a plaintiff must show: (1) that she suffered intentional discrimination because of race; (2) the discrimination was pervasive and severe; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996). In making its determination, the court must examine all of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Put differently, the court must evaluate the record as a whole to determine whether Martin has proven her case, because "'[p]articularly in the discrimination area, it is often difficult to determine the motivations of an action and any analysis is filled with pitfalls and ambiguities . . . . [A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.'" *Cardenas*, 269 F.3d at 261 (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999)).

Martin again alleges that management's failure to address certain workplace issues created a racially hostile work environment. Specifically, Martin focuses on the same conduct that she described at deposition as supporting her discrimination claim. Martin also points to several incidents in which coworkers referred to each other using racial terms. Because the court finds that Martin has failed to present a triable issue of fact with respect the first element of the prima facie

case for a hostile work environment claim, it will grant the defendant's summary judgment motion on this claim.

1. Intentional Discrimination on the Basis of Race

Racial discrimination in the workplace manifests itself in two forms, overt conduct and facially neutral conduct, either of which can support a plaintiff's claim for hostile work environment. *Cardenas*, 269 F.3d at 260-61. A plaintiff alleging discrimination through facially neutral conduct, however, must show some "surrounding circumstances that would expose the purportedly discriminatory nature of what is otherwise racially neutral conduct." *Brooks v. CBS Radio, Inc.*, Civil Action No. 07-0519, 2007 WL 4454312, at *12 (E.D. Pa. Dec. 17, 2007).

According to Martin's deposition, the specific conduct that contributed to her hostile work environment includes: management's failure to address issues regarding personal hygiene of employees, workplace misconduct between employees, requests for new printers and other equipment, and requests for pay raises for Martin and other file room employees.[4] Accordingly, Martin's claim can be classified as one that is facially neutral.[5]

Here, the record evidence fails to demonstrate or raise a triable issue of fact as to whether the defendant's alleged conduct was intentionally based on race for several reasons. First, Martin

---

[4] Martin also testified at her deposition regarding several incidents during which coworkers used racial terms. (D.I. 26, at A48, A71-72, A74, A78, A82-83.) Martin further testified that she had not directly heard any of the comments (id. at A49, A73, A75, A77, A79), and that the defendant took action and held meetings to address the comments. (Id. at A50, A71-72, A75-76.) Finally, Martin testified that she was not bothered by the comments. (Id. at A73.) Thus, it appears that Martin's claim regarding a hostile work environment relates not to the incidents involving the use of racial terms, but rather to management's failure to adequately handle her complaints and requests.

[5] As with her discrimination claim, Martin testified that management would have handled her complaints in a timely manner if she was white.

does not point to any racist comment either spoken or written to her. That is, there are no surrounding circumstances that indicate the facially neutral conduct of which Martin complains is actually discriminatory. While the defendant's failure to address personnel issues and requests for equipment and raises may be considered perverse, untimely, or inconvenient, it is facially unrelated to Martin's race. In addition, with respect to the pay raises, Martin testified that she had requested them for all file room employees, some of which were Caucasian and some of which were African American. Finally, Martin's belief that management would have handled the situations in a timely manner if she was white is based on mere speculation, which is insufficient to prove discrimination. *Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999). Accordingly, the facts of this case fail to establish the first element of a hostile work environment.

## VI.   CONCLUSION

For the aforementioned reasons, the court will grant the defendant's motion for summary judgment and dismiss all of the plaintiff's claims.

Dated: March 10, 2008                                 /s/ Gregory M. Sleet
                                                      CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HELEN D. MARTIN, | ) | |
| | ) | |
|     *Pro Se* Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-303 GMS |
| | ) | |
| PACHULSKI, STANG, ZIEHL, | ) | |
| YOUNG & JONES, P.C., | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1.     The defendant's Motion for Summary Judgment (D.I. 25) is GRANTED.

2.     The Clerk of Court is directed to close this case.


Dated: March 10, 2008                             /s/ Gregory M. Sleet
                                                                           CHIEF, UNITED STATES DISTRICT JUDGE